UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| DONA K. PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:05CV10 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the denial of Plaintiff's applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Act. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**Procedural History**

On August 19, 2003, Plaintiff filed an application for Supplemental Security Income Benefits (SSI). (Tr. 130-132) She filed an application for Disability Insurance Benefits (DIB) on September 2, 2003, alleging disability beginning February 6, 2003. (Tr. 19, 45-47) Both applications were denied. (Tr. 19-23; 133-137) On May 11, 2004, Plaintiff testified at a hearing before an Administrative Law Judge (ALJ). (Tr. 155-192) In a decision dated June 25, 2004, the ALJ determined that Plaintiff was not disabled and was not entitled to a period of disability, Disability Insurance Benefits, or Supplemental Security Income. (Tr. 14-18) On February 3, 2005, the Appeals Council denied plaintiff's request for review. (Tr. 5-7) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## Evidence Before the ALJ

At her hearing before the ALJ, Plaintiff was represented by counsel. Plaintiff testified, along with a vocational expert (VE), Jeffrey Magrowski. Plaintiff was born on November 14, 1959. She last worked on February 4, 2003 for State Beauty Supply. Plaintiff testified that she was unloading a truck of beauty supplies and stocking the warehouse when she injured her back and was later hospitalized. She stated that she was diagnosed with a bulging disc in her low back. Plaintiff attempted to work at a nursing home and at MasterCuts after her injury, but she quit both jobs because of pain and numbness in her arms. Plaintiff reported that she was divorced and had two children over the age of 18. She weighed 137 pounds and measured 5 feet 4 inches. She completed the 10th grade and received her GED. In addition, Plaintiff graduated from beauty school. (Tr. 155-161)

Plaintiff further testified that she experienced headaches as a result of her disc problems. She received monthly neck treatments from Dr. Childress which helped. Childress would gently rock her neck and manipulated it to alleviate pain. Plaintiff stated that the headaches occurred a couple times a week, although some lasted all week if it was almost time for a treatment. Plaintiff testified that the headaches made her sick to her stomach, prevented her from looking at light, and hurt when holding her head up. While Plaintiff did not usually vomit, she stated that she vomited a couple times a year. Plaintiff previously took ibuprofen, but her doctor prescribed a new anti-inflammatory medication. (Tr. 162-163)

Plaintiff also testified that she had problems with her neck. She stated that when she looked down, her arm became numb and tingling. When she curled her hair or held the phone, Plaintiff experienced numbness in her arms and pain in her shoulders. The pain went through her neck,

2

shoulders, and arms. Plaintiff testified that she was unable to peel, curl her hair, stir, or write repetitively. The pain from her neck to her arms and hands was constant. Plaintiff testified that she took Lorcet for that pain. The pain in her hands also caused Plaintiff to drop things frequently due to problems with her grip. She testified, however, that she could pick up a coin from a counter. (Tr. 164-165)

Plaintiff also stated that she experienced back pain. She described the pain as radiating from her neck to her mid-back. In addition, driving or sitting too long caused deep pain in her lower back and hip area. The pain radiated to her buttocks and down her legs. Plaintiff testified that the pain was worse in her left leg and in her right arm. With regard to the pain in her left leg, Plaintiff stated that it radiated from the middle of her buttocks and wrapped around the front of her thigh. Plaintiff testified that her left leg was weaker due to a previous fracture from a car accident. Plaintiff had two plates and fourteen screws in the middle of her leg. While weather and stress did not seem to affect her leg problems, Plaintiff stated that her leg sometimes gave out when she walked. The pain in her hip area stemmed from deep low back pain which affected the hip bones and the entire low torso area. (Tr. 165-168)

Plaintiff further testified to having problems with anxiety and depression, for which she took Ativan at night. Plaintiff saw a counselor for a couple months. In addition to her other medications, Plaintiff took Skelaxin, Naproxen, and Estradiol. Plaintiff testified that she experienced drowsiness as a result of her medications. (Tr. 168-169)

With regard to her activities, Plaintiff testified that she could drive for a half hour before she needed to stop. Plaintiff would usually get out of the car to go to the bathroom or stretch and move around. Her hands also went numb when holding the wheel. Plaintiff's 19-year-old daughter helped

3

Plaintiff with the grocery shopping. Plaintiff opined that she could shop for 20 minutes to a half hour. If she was in the store too long, her lower back hurt so badly that she could not stand it. Plaintiff's daughter also helped with the housework such as vacuuming, mopping, sweeping, and laundry. Plaintiff further testified that she had difficulty putting on her shoes and pants due to painful bending, especially in the morning when she had spine stiffness. To loosen up in the mornings, Plaintiff took her medicine, poured a cup of coffee, and lay down until the medicine began working. (Tr. 170-172)

Plaintiff lived in a trailer with her daughter. They lived off her daughter's child support, which ended the previous month, help from Plaintiff's father, and food stamps. Plaintiff's father gave her a car; however, the transmission went out so she could no longer use it. (Tr. 172)

With regard to daily activities, Plaintiff testified that she was unable to sleep through the night. She woke up two or three times because her arms went numb and ached, requiring her to rub them. Plaintiff lay on her right side with a pillow between her knees to relieve pressure from her low back. She also had a pillow under her neck and in front of her. Plaintiff typically went to bed between 9:00 and 10:00 p.m. and woke up around 7:00 a.m. During the day, Plaintiff took a shower, cleaned up, ate breakfast, and rested on her bed while watching television. Her father visited at least three times a week. Plaintiff also took a nap every afternoon. She described her energy level as tiring easily. Plaintiff stated that the pain was constant. She had difficulty concentrating on things like reading and writing, especially when she was tired. Plaintiff was able to make her own meals, which consisted of eggs, lunch meat, cheese, and salads. Her daughter made dinner. Plaintiff did not belong to any clubs, churches, or organizations. Plaintiff opined that she could sit comfortably for an hour before her arms went numb and low back ached. Plaintiff could stand for no more than 15 minutes in one spot before needing to move around. Plaintiff could do only a few dishes at a time before sitting

down. She was able to walk through the grocery store, which took about 20 minutes. During the week, the heaviest items Plaintiff lifted were a gallon of milk or bag of sugar. Lifting milk or pouring coffee hurt Plaintiff in the morning until her joints were more limber two hours later. Plaintiff was unable to bend over. (Tr. 173-176)

The ALJ also questioned Plaintiff about her ability to perform work that allowed her to sit and stand as needed during the work job and involved lifting between 10 and 20 pounds. Plaintiff answered that she would still be unable to work because her body hurt all the time, even with a change of position. Further, Plaintiff testified that it would be difficult to stand and sit all day due to her need to lie down. (Tr. 180-181)

With regard to her treatment, Plaintiff testified that her neurosurgeon did not recommend surgery. Plaintiff underwent physical therapy on her neck; however, the pain, numbness, and range of motion became worse, so her doctor discontinued the therapy. Plaintiff also received trigger point epidurals which did not help. (Tr. 181-183)

A vocational expert (VE), Dr. Magrowski, also testified at the hearing. He first summarized Plaintiff's work history in relation to the regulations. The ALJ then asked the VE to assume a person of Plaintiff's age; education; experience; capacity for either sedentary or light work with flexibility to alternate every 45 minutes between sitting and standing; avoidance of heights and hazards; and ability to use ramps, use stairs, crouch, crawl, kneel, stoop, and balance only occasionally. Given these assumptions, the ALJ inquired whether such a person could person could perform any of Plaintiff's past work. The VE answered that she could perform jobs as a cashier, assembler, and house cleaner at a light level. The VE also testified, however, that employers of these positions would only tolerate one or two days absent a month, which could result in termination over a period

5

of 90 days. (Tr. 184-189)

Plaintiff's attorney also questioned the VE. He asked the VE whether any jobs would be available for a person with constant numbness and tingling in her hands throughout the workday, along with difficulty gripping, manipulating, and using their hands in front of them. The VE answered that these problems would eliminate the jobs the VE described. In addition, an employer would not tolerate the need to lie down throughout the day, other than on scheduled breaks. (Tr. 189-190)

## **Medical Evidence**

On February 9, 2003, x-rays of Plaintiff's lumbar spine revealed minimal spondylosis in the upper lumbar spine. Otherwise, the film was unremarkable. The physician recommended an MRI. (Tr. 95) An April 2, 2003 MRI showed a left paracentral bulging disc at L4-5 extending into the floor of the left neural foramen. The MRI also revealed a small posterior central bulging disc at L5-S1 with no evidence of encroachment on the exiting nerve roots. (Tr. 87) A consultative examination on April 24, 2003 revealed no tenderness in her back to palpation and no trigger points. Dr. Tria Whilhite recommended that Plaintiff receive a series of epidural injections. (Tr. 125-126)

On June 10, 2003, Plaintiff saw Dr. Michael Oh for complaints of back and neck pain. Plaintiff rated her pain at 6/10 but noted that at its worst, the pain could become 10/10. Dr. Oh noted that Plaintiff did not appear to be in acute distress. Sensory and motor examinations were normal, except for decreased knee-jerk on the left side and decreased fine-touch in the left hand. Dr. Oh assessed low back pain; lumbar spondylosis; and cervical spondylosis. He recommended that Plaintiff continue with conservative treatment such as physical therapy and a possible evaluation with a psychiatrist. He did not recommend surgery. (Tr. 153-154)

On October 20, 2003, Dr. Raymond Leung evaluated Plaintiff on behalf of Disability Determinations. Plaintiff's chief complaint was back pain in both the upper and lower back which radiated down her buttocks. She also complained of neck problems and numbness in her arms. Plaintiff reported that she was in constant pain but that pain medicines helped. She stated that she could lift 5 pounds and walk 1 block. Plaintiff smoked a pack of cigarettes daily. General physical examination was within normal limits, and Plaintiff was not in apparent distress. Examination of Plaintiff's musculoskeletal system revealed a somewhat slow gait with minimal limp and short strides. Plaintiff could walk 50 feet unassisted. She stated that she could not heel/toe walk, so Plaintiff did not attempt to do so. She could squat 1/4 of the way down and perform forward flexion to 60 degrees without vertebral tenderness. Dr. Leung noted no paralumbar spasms. Plaintiff did not have difficulty getting on and off the exam table. She could oppose the thumbs to the fingers, and there was no muscle atrophy. While Plaintiff's neck was non-tender, she had decreased range of motion in her neck. Motor and grip strength were 4+/5. Dr. Leung's impressions were left paracentral disc bulge at L4-5 into the floor of the left neural foramen and small posterior central disc bulge at L5-S1. (Tr. 97-100)

On November 10, 2003, Dr. Bruce Donnelly completed a Physical Residual Functional Capacity Assessment form. He opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. She could stand and sit for about 6 hours in an 8-hour workday. Further, she had unlimited ability to push and/or pull. Dr. Donnelly noted, however, that Plaintiff should only occasionally climb ladders, ropes, and scaffolds and occasionally stoop. Dr. Donnelly concluded that Plaintiff's complaints of pain were consistent with the objective evidence in the file and were credible. (Tr. 103-110)

7

On January 21, 2004, Plaintiff saw Dr. Gregory Brandenberg for chronic cervical and lumbar pain. Dr. Brandenberg noted that Plaintiff was a well-developed female who did not appear to be in significant discomfort. Her gait was normal, and she was able to rise from a chair to a standing position without difficulty. Examination of her spine revealed tenderness to palpation in the paracervical muscles, interscapular muscles, and lumbosacral region. Plaintiff had good range of motion of her cervical spine with some slight restriction at extremes. Range of motion of the lumbar spine was diminished in all places. Straight leg raising sign was negative. Dr. Brandenberg's impression was chronic cervical and lumbar discogenic pain without evidence of myeloradiculopathy on examination. Dr. Brandenberg noted that Plaintiff's description of intermittent non-dermatomal symptoms in both arms could not be ascribed to the C5-6 disk level. Likewise, her complaints of numbness in a femoral distribution of her left leg was inconsistent with the MRI scan. Dr. Brandenberg opined that Plaintiff's pain was discogenic in etiology and that surgical intervention was not warranted. He recommended that Plaintiff attend a multidisciplinary pain clinic. (Tr. 111-113)

Dr. Gene Childress has treated Plaintiff from July 2003 to present. The progress reports indicate that Plaintiff complained primarily of low back pain and some neck pain. Dr. Childress noted restrictions in Plaintiff's flexion and extension and diagnosed cervical and lumbar radiculitis. He also prescribed pain medication and home physical therapy. (Tr. 114-116; 141-151)

**The ALJ's Determination**

In a decision dated June 25, 2004, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 6, 2003. She had the medically determinable impairments of headaches and degenerative disc disease of the lumbar and cervical spine, which significantly limited her ability to perform basic work activities. However, Plaintiff did not have any impairments which met or

8

equaled any applicable section of the Listing of Impairments. (Tr. 17-18)

The ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work, with an ability to alternate sitting and standing about every 45 minutes. Plaintiff's RFC was also limited to not working around heights or other hazards and to only occasional other postural maneuvers. He further determined that Plaintiff had no impairments precluding her from perfroming her past relevant work as a cashier or assembly worker. The ALJ found that Plaintiff's testimony regarding pain and other symptoms was not fully credible. Thus, he concluded at step four of the sequential evaluation process that Plaintiff was not under a disability at any time on or before the date of the decision. (Tr. 18)

## **Legal Standards**

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that plaintiff is not engaged in substantial gainful activity; (2) that she has a severe impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities; or (3) she has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) she is unable to return to her past relevant work; and (5) her impairments prevent her from doing any other work. Id.

9

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F. 3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-586 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he or she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902

F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[1] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak 49 F.3d at 1354.

## Discussion

Plaintiff argues that the ALJ improperly discredited her testimony regarding pain and her ability to work. In addition, she asserts that the ALJ erred in concluding that Plaintiff's daily activities demonstrated an ability to perform gainful employment. The Defendant, on the other hand, contends that the ALJ properly evaluated the credibility of Plaintiff's subjective complaints.

The undersigned agrees that the substantial evidence supports the ALJ's credibility analysis in this case. The ALJ first assessed the medical evidence, which included the reports of Plaintiff's treating physician, the consulting neurosurgeon, and the consulting physicians on behalf of disability determinations. He noted the sparse medical evidence which included some objective findings but little treatment records. The ALJ pointed out that Dr. Childress treated Plaintiff's lumbar and cervical radiculitis with medication, physical therapy, and epidurals. Further, the consulting neurosurgeon

---

[1] The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

11

opined that surgery was not warranted and recommended a multidisciplinary pain clinic. In addition, the ALJ discussed Dr. Leung's evaluation, which showed no spasms or signs of muscular atrophy. Further, while Plaintiff demonstrated some decreased range of motion in her neck, there was no tenderness. The ALJ noted that Dr. Leung did not assess Plaintiff's RFC. However, Dr. Donnely, the non-examining medical consultant completed a Physical Residual Functional Capacity Assessment. The ALJ noted Dr. Donnely's findings that Plaintiff was able to lift 10 to 20 pounds with occasional stooping and climbing ladders, ropes, and scaffolds.[2] After reviewing the evidence, the ALJ concluded that the extent of medical treatment was inconsistent with the degree of pain and disability alleged by Plaintiff.

Failure to seek regular medical treatment is inconsistent with complaints of a disabling impairment. Comstock v. Chater, 91 F.3d 1143, 1146 (8th Cir. 1996). In addition, none of plaintiff's physicians restricted her activity. In addition, they treated her conservatively with heat, physical therapy, epidurals, and pain medication. Dr. Brandenberg noted that surgery was not warranted. Allegations of disability may be discounted where Plaintiff relies on a conservative course of treatment and has never undergone surgery. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (citation omitted); see also Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (same).

While the ALJ may not discount Plaintiff's allegations based solely on the objective medical evidence, the ALJ may disbelieve subjective complaints if the evidence as a whole contains

---

[2] Plaintiff argues that the ALJ ignored Dr. Donnely's opinion that Plaintiff's complaints were consistent with the objective medical evidence and that she was credible. Further, Plaintiff points to the fact that Dr. Leung's examination failed to contradict Plaintiff's allegations. Review of the medical evidence, however, demonstrates that, while these consulting physicians took into account Plaintiff's pain, neither doctor found Plaintiff's symptoms disabling. Indeed, Dr. Donnely found that the objective medical evidence supported an RFC determination which included the ability to lift, sit, and stand/walk in an 8 hour work day.

inconsistencies and the ALJ expressly discredits Plaintiff's complaints of disabling pain. Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005). Here, the ALJ also assessed Plaintiff's testimony, including her daily activities. The ALJ noted that Plaintiff was able to make meals, do dishes for short periods of time, and drive. These activities are inconsistent with her allegations of disabling pain. Gwanthey v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (holding that Plaintiff's ability to perform housework among other activities precluded a finding of disability). While these activities alone may not constitute substantial evidence that plaintiff is not disabled, the activities in conjunction with the lack of supporting medical evidence may be used to discredit plaintiff's subjective complaints. Kelley v. Callahan, 133 F.3d 583, 588-89 (8th Cir. 1998). Therefore, the undersigned finds that substantial evidence supports the ALJ's credibility determination and conclusion that plaintiff was not under a disability.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  8th  day of March, 2006.